Oral Argument: Not Yet Scheduled

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 08-3033
(Consolidated with Nos. 10-3108 & 11-3031)
——————————————————————

UNITED STATES OF AMERICA,
Appellee,
v.

JOSEPH JONES, DESMOND THURSTON & ANTWUAN BALL
Appellants.
——————————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
——————————————————————

INITIAL REPLY BRIEF OF APPELLANTS

**On Appeal From The
United States District Court
for the District of Columbia**

Stephen C. Leckar, #281691
1850 M St., NW
Suite 240
Washington, D.C. 20036
202.742.4242
Counsel for Antwuan Ball

*(Appointed by the Court)*

Jonathan Zucker, #384629
Patricia A. Daus, #412174
1350 Connecticut Ave., NW
Suite 202
Washington, D.C. 20036
202.624.0784
Counsel for Desmond Thurston
*(Appointed by the Court)*

Anthony D. Martin, #362537
Maryland Trade Center, III
7501 Greenway Center Drive, Ste 460
Greenbelt, MD 20770
301.220.3700
Counsel for Joseph Jones
*(Appointed by the Court)*

**Table of Contents**

Table of Contents.................................................................. i

Table of Authorities ............................................................ iii

Summary of Reply Argument.................................................. 1

**Argument** ............................................................................ 5

**I. The "Statutory Maximum" is a term of art in the sentencing Process**................................................................................. 5

    *A. Cunningham's significance to the questions presented.*................. 8

    *B. The constitutional significance of reasonableness review post Booker.* ...................................................................... 10

    *C. Ascertaining the constitutional statutory maximum.* .................... 11

    *D. Further reflections on the constitutional issues at stake, and the implications of* Alleyne. ............................................... 15

**II. When a sentence is substantially reasonable only because of a judicially-found fact, that fact is legally essential to the sentence and the Sixth Amendment governs its application.**........................ 19

    *A. The "as-applied" doctrine is unexceptional: as its name implies, it depends on the facts.* ............................................... 21

    *B. The facts fit comfortably within the as-applied doctrine.*............. 22

    *C. This Circuit has not adjudicated an as-applied claim.* ................. 26

    *D. The Government's out-of-Circuit references are readily distinguishable.* .......................................................... 27

**III. The Government has not rebutted the defense theory of procedural unreasonableness.** .............................................................. 29

**A.** ***Severe foundational defects affect the prosecution's alternative universe.*** ........................................................................ 31

**B.** ***The Government has not shown the proffers to be reliable.*** ........ 44

**IV.** **The Government's post-hoc explanations do not justify the deprivation of Appellants' right to a speedy sentencing.** ................. 47

Conclusion ..................................................................... 50

Word Count and Font Certification ............................................. 51

Certificate of Service ......................................................... 52

## Table of Authorities

<u>Cases</u>

*Alleyne v. United States*,
   __ U.S. _, 2013 U.S. LEXIS 4543 (U.S. June 17, 2013)…2, 15, 17, 18, 20

*Apprendi v. New Jersey*,
   530 U.S. 466 (2000)………………………………….…...6, 18, 19, 20

*Anderson v. City of Bessemer City, N.C.,*
   470 U.S. 564 (1985) ……………………………….…………….40, 41

*Barker v. Wingo,*
   407 U.S. 51 (1972)……………………………………………..47

*Blakely v. Washington,*
   542 U.S. 296 (2004) ……………………………………………9, 13

*Concrete Pipe & Prods. Of Cal., Inc., v. Constr. Laborers, etc.,*
   508 U.S. 602 (1993). ……………………….………………….…39

*Cunningham v. California*,
   549 U.S. 270, 281 (2007)……..………8, 9, 10, 12, 13, 14, 15, 21, 22, 27

*Duncan's Point Lot Owners Ass'n v. FERC,*
   522 F.3d 371 (D.C. Cir. 2008). …………………….…….………25

*Fletcher v. United States,*
   158 F.2d 321 (D.C. Cir. 1946)………………………………….33

*Gall v. United States,*
   552 U.S. 38 (2007) ………………………………........7, 11, 26, 28

*Kimbrough v. United States,*
   552 U. S. 85 (2007) ……………………………...………14, 39

*Parker v. United States*,
   801 F.2d 1382 (D.C. Cir. 1986). …………….……..……………33

*Peugh v. United States,
   2013 U.S. LEXIS 4359 (June 10, 2013)……………………..…….....7, 12

Pullman-Standard v. Swint,
   456 U.S. 273 (1982) …………………………..……………………..44

Ortega v. Duncan,
   333 F.3d 102 (2nd Cir. 2003). …...……………………..…………..….…41

Ring v. Arizona,
   536 U.S. 584 (2002). ……………………..…………………………..13

*Rita v. United States,
   551 U.S. 338 (2007)…...………...10, 13, 14, 15, 21, 22, 23, 24, 26, 27, 28

*In re Sealed Case,
   552 F.3d 841 (D.C. Cir. 2009)…………………………………………44

*Southern Union Co. v. United States,
    132 S. Ct. 2344 (2012)…………................................................15, 19, 20

Spears v. United States,
   555 U.S. 261 (2009) ………………………………………….…...………39

United States v. Acosta,
   85 F.3d 275 (7th Cir. 1996) ………………………………..…………35

United States v. Baldwin
   389 F. Supp. 2d 1 (D.D.C. 2005) …………..…………………………..39

United States v. Baylor,
   97 F.3d 542 (D.C. Cir. 1996) ………………………………..……15

*United States v. Begin,
   696 F.3d 405 (3rd Cir. 2012)…………………………………...……...31

United States v. Beler,
   20 F.3d 1428 (7th Cir. 1994) …………………………………………33

iv

*United States v. Boney,*
    977 F.2d 624 (D.C. Cir. 1992) ………………...…………….…….15

*United States v. Booker,*
    543 U.S. 220 (2005) ………...…6, 9, 10, 11, 12, 13, 14, 15, 17, 27, 28, 29

*United States v. Bradley,*
    628 F.3d 394 (7th Cir. 2010) ……………………….…….…………25

*United States v. Bras,*
    483 U.S. 103 (D.C. Cir. 2007) ……………………………...……..26

*United States v. Brothers,*
    75 F.3d 845 (3rd Cir. 1996) …………………………….…...……33, 36

*United States v, Brown,*
    516 F.3d 1047 (D.C. Cir. 2008)……………………………...……..26

*United States v. Broxmeyer,*
    699 F.3d 265 (2nd Cir. 2011)……………………………………28

*United States v. Bryant,*
    571 F.3d 147 (1st Cir. 2009)……………………………….…….…..36

*United States v. Chisum,*
    502 F.3d 1237 (10th Cir. 2007)…………………….………...……..36

*United States v. Corner,*
    598 F.3d 411 (7th Cir. 2010) *(en banc)*…………………………39

*United States v. Cunningham,*
    429 F.3d 673 (7th Cir. 2005)………………………….………………44

*United States v. Doe,*
    128 Fed. Appx. 179 (2nd Cir. 2005)…………………………………12

*United States v. Dorcely,*
    454 F.3d 366 (D.C. Cir. 2006) …………………………….....……26

*United States v. Dorvee,*
    616 F.3d 174 (2nd Cir. 2010)……………………………………………14

*United States v. Gardellini,*
    545 F.3d 1089 (D.C. Cir. 2008)……………………………………...………25

*United States v. Gaudin,*
    515 U.S. 506 (1995) …………………………...………………….…………16

*United States v. Johnson,*
    635 F.3d 983 (7th Cir. 2011) ………………………….…..…………14, 46

*United States v. Lawson,*
    494 F.3d 1046 (D.C. Cir. 2007)………………………………….…..26

*United States v. Lente,*
    47 F.3d 1021 (10th Cir. 2011)…………………….………………..33

*United States v. Lemon,*
    723 F.2d 922 (D.C. Cir. 1983). ……………………….....………..47

*United States v. Mahler,*
    984 F.2d 984 (8th Cir. 1993). …………………………...………..34, 46

*United States v. Maliszwewki,*
    161 F.3d 992 (6th Cir. 1998) ……………………..…………..……35

*United States v. Marrero-Ortiz,*
    160 F.3d 768 (1st Cir. 1998) …………………………………………35

*United States v. Mejia,*
    597 F.3d 1329 (D.C. Cir. 2010). …………………………..…...26

*United States v. Miele,*
    989 F.2d 659 (3rd Cir. 1993) …………………..…………….………35

*United States v. Moncivais,*
    492 F.3d 652 (6th Cir. 2007). ………………………..……………45

*United States v. Montague,*
    40 F.3d 1251 (D.C. Cir. 1998). …………………..…………..……40

*United States v. Olhovsky*
    562 F.3d 530 (3rd Cir. 2009) ……………………...………..14

*United States v. Phinazee,*
    515 F.3d 511 (6th Cir. 2008) ……………………………..……..28

*United States v. Pineda-Doval*,
    614 F.3d 1019 (9th Cir. 2010), *appeal after remand,*
    692 F.3d 942 (9th Cir. 2012) …………………………...…………39, 40

*United States v. Powell,*
    469 U.S. 57 (1984) ………………………..…………………16, 32, 38

*United States v. Price,*
    409 F.3d 436 (D.C. Cir. 2005) ……………………...………....36

*United States v. Reyes-Hernandez*,
    624 F.3d 405 (7th Cir. 2010) …………………..……...………14

*United States v. Richards*,
    27 F.3d 465 (10th Cir. 1994) …………..………………...…………35, 36

*United States v. Rizzo*,
    349 F.3d 94 (2nd Cir. 2003). …………………………..……...41

*United States v. Settles,*
    530 F.3d 920 (D.C. Cir. 2008) …………………..……………..……26

*United States v. Simmons*,
    964 F.2d 763 (8th Cir. 1992) …………………..…………….....37

*United States v. Smiley,*
    553 F.3d 1137 (8th Cir. 2009) ……………………..……………40

*United States v. Stover*,
    329 F.3d 859 (D.C. Cir. 2003) …………………..……...……..35

*United States v. Tavano*,
    12 F.3d 301 (1st Cir. 1993)……………………………………...…41

*United States v. Toms*,
    136 F.3d 1767 (D.C. Cir. 1998) …………………………...……………30

*United States v. Valencia-Lucena,*
    925 F.2d 506 (1st Cir. 1991). …………………………...……………34

*United States v. Vonner*,
    516 F.3d 382 (6th Cir. 2008) …………………………...…………...…28

*United States v. Watts,*
    519 U.S. 148 (1997). ……………………………...…………………...5

*United States v. White,*
    551 F.3d 381 (6th Cir. 2008) (*en banc*) ……...……………………...16

*United States v. Yelverton,*
    197 F.3d 531 (D.C. Cir. 1999)...……………………………………47, 49

## Constitutional and Statutory Provisions and Rules

U.S. CONST., Amdt. V……………………...……………………………6

U.S. CONST., Amdt. VI...2, 6, 8, 9, 10, 11, 12, 13, 14, 18, 19, 20, 22, 28, 29

18 U.S.C. § 3553. …………………………………………...……14, 25, 32, 44

## Other Authorities

Frank O. Bowman,
    *The Question is Which is to Be Master - That's All*: *Cunningham*,
    *Claiborne*, *Rita and the Sixth Amendment Muddle*,
    19 Fed. Sent. R. 155 (Feb. 2007). ……………………………...……13

Gerald Leonard & Christine Dieter, "Punishment Without Conviction:
Controlling the Use of Unconvicted Conduct in Federal Sentencing,"
    17 BERKELEY JOUR. CRIM. LAW 260, 287 (2012)…………...…….29

*Robert Allen Semones, "A Parade of Horribles: Uncharged Relevant Conduct, the Federal Prosecutorial Loophole, Tails Wagging Dogs in Federal Sentencing Law,"
    46 U.C. DAVIS L. REV. 313, 351 (2012)………………….……….….29

Joseph J. Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES  (Abr. 1833)…………………………………………...18

United States Sentencing Commission,
    Results of Surveys of District Judges January 2010-March 2010
    (June 2010), 23 FED. SENT. REP. 296 (April 2011)…………...…....…15

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 08-3033
(Consolidated with Nos. 10-3108 & 11-3031)
————————————————————

UNITED STATES OF AMERICA,
Appellee,
v.
JOSEPH JONES, DESMOND THURSTON & ANTWUAN BALL
Appellants.
————————————————————
APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
————————————————————

**Summary of Reply Argument**

1.  The Government claims that a district court may sentence an offender by deciding that he committed a crime for which a jury acquitted him, provided the sentence does not exceed the offense of conviction's statutory maximum.

A.  Actually a "statutory maximum" includes constraints within a statutory ceiling.  The doctrine of appellate review based on reasonableness is one such constraint.  A substantively reasonable sentence requires a correlation between the record and the reasoning for that sentence.  Reasonableness review thus presupposes that some sentences will be unreasonable absent additional facts justifying them.  When a jury has

1

rejected those additional facts, the sentence violates the Sixth Amendment
jury trial guarantee, even if it the statutory ceiling isn't exceeded.

B.  Using acquitted conduct to sentence a defendant dramatically
above the federal guidelines for the offense of conviction not only denigrates
the Sixth Amendment jury guarantee, but is inconsistent with U.S.S.G.§
1B1.3, which does not facially require the use of acquitted conduct.

C.  Where a sentence actually is based on the elements of a more
serious offense than the one of conviction, then under *Alleyne v. United
States*,[1] the facts of the offense animating the conviction must be found by a
jury.  Appellants were punished for a conspiracy offense for which they
were acquitted, not for the few street-level crack cocaine sales for which
they were convicted.

**2.**  Even if acquitted conduct sometimes may be considered to
increase a Guidelines sentencing range, the doctrine of "as-applied" review
demonstrates that Appellants were over-sentenced.  Their very lengthy
sentences were driven by judicial findings of a "conspiracy" and don't
withstand reasonableness review absent those non-elemental facts.

A.  The Government depicts the as-applied theory as being an
idiosyncratic viewpoint.  Both the Government and the out-of-circuit

---

[1]  _ U.S. _, 2013 U.S. LEXIS 4543 (U.S. June 17, 2013).

2

decisions on which it relies fail to recognize that at least five sitting Justices recognize the theory's underlying principles. Nor do prior Circuit decisions foreclose its application.

B.  The Government's contention that an as-applied claim requires comparing the appellant's case with the facts of all previously decided appellate cases misconstrues the language that it relies on.  The sentences handed out here fit within the hypotheticals that exemplify the theory.

C.  Similarly, the Government's assertion that the seriousness of Appellants' crimes of conviction and their past histories suffice to uphold their sentences is a bald argument that should be rejected.  And its claim that recognizing the as-applied theory would upend federal sentencing is meritless. By definition the as-applied concept excludes mine-run matters.

3.  Appellants also submitted a theory of procedural unreasonableness which is based on the conspiracy case's foundering on the testimony of cooperators whose credibility was rejected by a jury.  The trial court failed to respond to Appellants' objections to the Government's resurrecting this discredited claim at their sentencing and explain what made these people so believable.

A. Although the Government asserts that an appellate court cannot decide credibility, no one seeks that.  For similar reasons, the Government's

3

elaborate recital of its trial theory -- which does not counter the cooperators' yawning chasm of credibility deficits -- misses the mark. Its claim is one for the trial judge to resolve in a manner that tells this court why it chose not to respect the jury's verdict. Informed review is not realistic on the sentencing hearings' record.

B.  Nor is review advanced by the Government's urging the Court to consider the so-called "'Congress Park Crew' membership list," its reference to a conviction rendered in a separate prosecution, and its quote of Mr. Ball's testimony in an unrelated case. None were considered in Appellants' sentencing.

C.  Although the quantity of drugs drove Appellants' sentences, the Government brushes over the trial judge's failure to recognize the lack of objective corroboration for the cooperators' varying accounts, their histories of severe addiction, the high degree to which they were beholden to the Government, and their overall untrustworthiness.   Whether viewed under clear and convincing evidence, which supposedly governed Thurston and Ball's sentencing, or the preponderance of evidence standard used in Jones's case, the trial court did not adequately address these concerns.

D. The Government incorrectly states that Appellants claimed that proffers untested by cross-examination cannot be considered at sentencing.

Appellants have contended that these proffers, which said little about the so-called conspiracy, are unreliable markers on which to base sentences.

**4.**   The Government has not justified the district court's three-year delay in sentencing Thurston and Ball, which delayed this appeal.  Their appeal should be successful but if it isn't, then this Court should create an equitable remedy to cure their prejudice. Appellants propose an additional credit of one day for each day that elapsed after their original sentencing date.

**Reply Argument**

## I.  The "Statutory Maximum" is a term of art in sentencing.

The Government implies that little has changed in the sentencing calculus since *United States v. Watts*.[2]  Actually the law is far more nuanced, as a simple example will demonstrate.

Suppose a law stated that upon a jury conviction of distribution of crack cocaine the judge could sentence a defendant to five years' imprisonment.  Assume the law also provided that if  the judge then found by a preponderance -- or by clear and convincing evidence -- that the transaction occurred as part of a conspiracy, which was the "real offense," then the defendant could receive twenty years in jail, even if the defendant

---

[2]  519 U.S. 148 (1997).

5

had been acquitted of that charge.  That would raise Sixth and Fifth

Amendment infirmities because the defendant could be punished for an

offense whose elements were not found by a jury using a beyond-a-

reasonable doubt standard.[3]

   If a statute cannot permit this, the Guidelines, which are

administrative issuances, cannot do an end-run and punish someone for an

offense whose elements were rejected by a jury.

   The Government disagrees.  It contends that once the *Booker*

Remedial decision rendered the Guidelines advisory,[4] federal courts have to

include acquitted conduct in a defendant's "base offense level" and may

sentence offenders to any punishment within the offense of incarceration's

statutory maximum.  But an administrative scheme such as the Guidelines

cannot accomplish something that a statutory scheme cannot do.

   Moreover the Government's belief that the advisory federal guidelines

grant judges great discretion is mistaken: the Guidelines have "force as the

framework for sentencing" and "remain the starting point for every

_____

[3]  *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The Government's
     statement that Appellants did not raise a Fifth Amendment claim is
     erroneous.  *Compare* Government Brief at 49 n.27 ("Government:") *with*
     Appellants' Brief at 16-17, 45 ("Appellant:")

[4]  *United States v. Booker,* 543 U.S. 244 (2005).

sentencing calculation in the federal system."[5]  Basically "the post-*Booker* sentencing regime puts in place procedural 'hurdle[s]' that, in practice, make the imposition of a non-Guidelines sentence less likely."[6]  Thus the "advisory" Guidelines "nonetheless impose a series of requirements on sentencing courts that cabin the exercise of [judicial] discretion."[7]

Because the Guidelines limit discretion, the Government is mistaken in arguing that the "statutory maximum" is the highest punishment provided in a code section defining an offense.  As we shall see, the Constitution places constraints that operate *within* statutory maxima, such as the sentencing guidelines, and limits sentences to what would be reasonable for a given offense as defined by a jury's factual finding.

Currently "'district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.'"[8]  When a Guidelines sentence is based on the judge's conclusion

---

[5]  *Peugh v. United States*, _ U.S. _, 2013 U.S. LEXIS *22-*23 (June 10, 2013).  While *Peugh* construed the Ex Post Facto Clause, the majority opinion sheds light on the Supreme Court's perspective on the current federal sentencing regime.

[6]  *Peugh*, 2013 U.S. LEXIS, at *23 (citation omitted).

[7]  *Id.,* 2013 U.S. LEXIS, at *24.

[8]  *Id.,* 2013 U.S. LEXIS, at *21 (quoting *Gall v. United States,* 552 U.S. 38, 50 n.6 (2007)) (emphasis original).

that the defendant committed a more serious offense for which the defendant was acquitted by a jury, and it is that offense for which the offender is being punished, then constitutional considerations limit the punishment to the Guidelines range for the offense that the jury found beyond a reasonable doubt that the defendant committed. The punishment cannot be based on a different and higher range that a judge thinks the defendant deserved.

### A. *Cunningham's significance to the questions presented*

We revisit *Cunningham v. California*,[9] in which the Supreme Court stated:

> This Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely a preponderance of the evidence.[10]

**1.** The majority in *Cunningham* described what constitutes a "statutory maximum" for Sixth Amendment purposes. The Court found the statutory maximum as the middle term of California's three-tiered Determinate Sentencing Law ("DSL"). If only the elements of the charged offense were proven, a punishment at that level would result whereas a

---

[9] 549 U.S. 270 (2007).

[10] *Id.* at 280.

8

sentence to the upper tier would require the judge to find facts that constituted an aggravating circumstance.[11]

The Supreme Court rejected the state's argument that because the DSL afforded judges discretion to decide whether the upper sentence was justified, the statutory maximum was the uppermost statutory tier. Referencing *Blakely v. Washington*[12] -- a decision barely mentioned by the Government here[13] - the Court responded that "broad discretion to decide what facts may support an enhanced sentence . . . does not shield a sentencing system . . . . If the jury's verdict alone does not authorize the sentence . . . the Sixth Amendment requirement is not satisfied."[14]

**2.** Granted, dicta in *Cunningham* distinguished the DSL from the post-*Booker* Guidelines. The Supreme Court found the distinction to be the federal system's conferring discretion on judges to sentence within a defined range, whereas the DSL fixed the sentence to a triad without any ranges for discretion.[15] But that difference did not uphold as constitutional the

---

[11]  *Id.* at 288-89.

[12]  542 U.S. 296 (2004).

[13]  Government:50.

[14]  *Cunningham,* 549 U.S. at 290.

[15]  *Id.* at 291-92.

formulation of guideline ranges using judge-found "facts" derived from a lesser standard than beyond a reasonable doubt.  Indeed the dissent in *Cunningham* found "The California sentencing law … indistinguishable in any constitutionally significant respect from the advisory Guidelines scheme that the Court approved in *United States v. Booker*."[16]

### B.  The constitutional significance of reasonableness review post-*Booker*

**1.**  The Government argues that the guidelines' "mandatory" nature was the infirmity at stake in *Booker*.  But that overlooks the defendant's right that sentencing-enhancing facts be proved to a jury beyond a reasonable doubt.[17]

**2.**  The Government professes that rendering the federal guidelines advisory remedied any Sixth Amendment concerns.[18]  But *Peugh* teaches that the notion of being "advisory" only goes so far.  There is another constraint operating <u>within</u> the Guidelines: the appellate review process

---

[16]  *Cunningham*, 549 U.S. at 297 (Alito, Kennedy & Breyer, JJ., dissenting) (ellipsis added).

[17]  *Cunningham*, 549 U.S. at 274.  As an aside, the Government inaccurately asserts that Appellants did not raise a beyond-a-reasonable-doubt claim and should be found to have abandoned that theory.  *Compare* Government:49 n.27 *with* Appellants' Brief at 16-17, 45 ("Appellant:").

[18]  Government:51-52, 56, 60-61, 62.

created in Remedial *Booker* and elaborated on in *Rita v. United States* and *Gall v. United States,* which establish "reasonableness" review.[19] Reasonableness review defines the statutory maximum for Sixth Amendment purposes in the federal sentencing scheme.  A substantively reasonable sentence requires a correlation between the record and the reasoning for that sentence.[20]  Where that incorporates acquitted conduct, Sixth Amendment implications arise.

### C.  Ascertaining the constitutional statutory maximum

*Booker* and *Peugh* refute the Government's insistence that the statutory maximum for Sixth Amendment purposes can only mean the maximum term allowable by statute.

**1.**  In *Booker,* a jury found the defendant guilty of possession with the intent to distribute 92.5 grams of crack, with a statutory range of 10 years-life and a Guidelines range of 210-262 months.  At sentencing, evidence that he was responsible for 566 grams more increased the range to 360 months-life.[21]  Although Booker's sentence fell within the statutory maximum of the

---

[19]  *Gall,* 552 U.S. at 51; *Rita v. United States,* 551 U.S. 338, 347 (2007); *Booker,* 543 U.S. at 260-61.

[20]  *Id.,* 545 F.3d at 1092-94.

[21]  *Booker,* 543 U.S. at 226.

offense of conviction (life), the Guidelines set a <u>different</u> constitutionally relevant ceiling.[22]  *Peugh* confirms as much, for it states that "[t] he post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review."[23]

Reasonableness review means that the "statutory maximum" for Sixth Amendment purposes is not automatically the maximum under the applicable statute.  For instance, suppose a defendant were charged under a statute with a penalty ranging from 5-40 years imprisonment but a jury found facts that only supported the bare elements of the offense. If the trial judge engages in serious dialectical reflection, then a 40-year sentence could not be justified without additional facts and a judgment correlating those judge-found facts and the sentence.[24]  In a Guidelines regime, each case's facts limit the sentence that a judge may reasonably impose.

---

[22]  *Id.* at 233-34.

[23]  *Peugh*, 2013 U.S. LEXIS, at *22.

[24]  *United States v. Doe*, 128 Fed. Appx. 179, 181 (2nd Cir. 2005) (vacating a sentence at the statutory maximum).  The dissent in *Cunningham* made a similar point: "[s]uppose that the sentencing judge imposes the maximum sentence allowed by statute -- 50 years of imprisonment -- without identifying a single fact about the offense or the offender as a justification for this lengthy sentence. Surely that would be an

**2.**  Logic counsels that post-*Booker*, a sentence at the statutory ceiling is unreasonable if only the bare elements of the offense were found by a jury.[25]  *Cunningha*m utilized this logic in concluding that the applicable statutory maximum was the middle term of the state's triad structure, the default provision when only the elements of the offense were proven.[26]

Although the Government speaks, at least in generalities, of the need to uphold district courts' discretion,[27] it never responds to *Cunningham*'s conclusion that "broad discretion to decide what facts may support an enhanced sentence. . . does not shield a sentencing system from the force of our decisions.  [I]f . . . the judge must find an additional fact to impose the longer term, the *Sixth Amendment* requirement is not satisfied."[28]

---

unreasonable sentence that could not be sustained on appeal." 549 U.S. at 302-03 (Alito, Kennedy & Breyer, JJ., dissenting).

[25]  549 U.S. at 289.  *See also Blakely*, 542 U.S. at 303-04; *Ring v. Arizona*, 536 U.S. 584, 586 (2002).

[26]  *Cunningham,* 549 U.S. at 293.

[27]  Government:56, 65.

[28]  *Cunningham,* 549 U.S. at 290 (emphasis original).  "After *Booker*, a sentencing judge is still presented with a statutorily created range of sentencing choices . . . .  A sentence at the upper end of such a range cannot be rationally justified unless the judge finds some fact in addition to the elements of the crime."  Frank O. Bowman III, *The Question is Which is to Be Master - That's All*: *Cunningham*, *Claiborne*, *Rita and the Sixth Amendment Muddle*, 19 FED. SENT. R. 155 (Feb. 2007).

**3.** The Sentencing Reform Act contains a further reason why legislative ceilings do not define the only maximum sentences for constitutional purposes.  That would undercut the statutory Parsimony Clause's "overarching command" that courts "'impose a sentence sufficient, but not greater than necessary, to comply with' the basic aims of sentencing . . . ."[29]  This proscription also was designed to ensure that sentencing reflects reasoned judgment that is reviewable on appeal.[30]  If the statutory ceiling were the invariable maximum, then judges could sentence offenders to that ceiling without transgressing the Parsimony Clause.

**4.** The Government frets that Appellants seek to cabin Remedial *Booker*.  Again, *Booker* did not create a pure discretionary sentencing system.  Nor was "*Booker*'s remedy for the Federal Guidelines . . . a recipe for rendering our Sixth Amendment case law toothless."[31]  *Booker* traded a

---

[29]  *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Rita,* 551 U.S. at 348; 18 U.S.C. § 3553(a).

[30]  *United States v. Johnson,* 635 F.3d 983, 988 (7th Cir. 2011) (vacating); *United States v. Reyes-Hernandez*, 624 F.3d 405, 420 (7th Cir. 2010); *United States v. Dorvee,* 616 F.3d 174, 182-84 (2nd Cir. 2010); *United States v. Olhovsky*, 562 F.3d 530, 547-48 (3rd Cir. 2009).

[31]  *Cunningham*, 549 U.S. at 292.

determinate scheme for one using reasonable, reviewable, factual

judgments.[32]

### D. *Further reflections on the constitutional issues at stake, and the implications of* **Alleyne**

Determining the appropriate range, Appellants have contended,

should be derived solely by the facts found by a jury beyond a reasonable

doubt and reflected in its verdict.[33] To allow punishment incorporating

acquitted conduct perpetuates a practice that is questioned by most district

courts[34] and astonishes most citizens.[35] There is proof of that here: the jury

foreperson wrote a letter of protest to the trial judge.[36]

---

[32] *Rita,* 551 U.S. at 353-54; *Cunningham*, 549 U.S. at 309 (Alito, Kennedy & Breyer, JJ., dissenting) ("*Booker*'s reasonableness review necessarily supposes that some sentences will be unreasonable in the absence of additional facts justifying them.").

[33] *Southern Union Co. v. United States,* 132 S. Ct. 2344, 2350 (2012) *(*citation omitted*)*.

[34] Appellants;21 & n.46. *See also* United States Sentencing Commission, "Results of Surveys of District Judges January 2010-March 2010," 23 FED. SENT. REP. 296, 302 (April 2011) (only 16% of respondents agreed acquitted conduct should be considered "relevant conduct").

[35] Appellants:22 & n.49. *See also United States v. Baylor*, 97 F.3d 522, 550-51 & n.2 (D.C. Cir. 1996) (Wald, J., concurring specially); *United States v. Boney*, 977 F.2d 624, 647 (D.C. Cir. 1992) (Randolph, J., dissenting in part).

[36] Appellants:44 & nn.131-32.

**1.**  In response, the Government states that a juror who expresses this sentiment should be thanked and politely sent away.[37] Putting aside the inherent faint whiff of paternalism, its attitude turns the Sixth Amendment on its head.[38] The prosecutors persuaded the judge to punish Appellants for a crime that the Government couldn't prove, in derogation of "the historical and constitutionally guaranteed right of criminal defendants to demand that the jury decide guilt or innocence on every issue, which includes application of the law to the facts."[39]  And they did this even though U.S.S.G. § 1B1.3 doesn't specifically require consideration of acquitted conduct.

**2.**  The Government's insistence that it is just to punish Appellants when the jury found its proof wanting also conflicts with *Booker*'s holding that "the interest in fairness and reliability protected by the right to a jury trial – a common law right that defendants enjoyed for centuries and this is

---

[37]  Government:64 n.39 (quoting *United States v. White,* 551 F.3d 381, 385-86 (6th Cir. 2008) (*en banc*)).

[38]  *White,* 551 F.3d at 393-94, 396-97 (Merritt, Martin, Daughtrey, Moore Cole & Clay, JJ., dissenting).  *See also United States v. Powell,* 469 U.S. 57, 65 (1984) (jury's "historic function, in criminal trials, [is] as a check against arbitrary or oppressive exercises of power by the Executive Branch").

[39]  *United States v. Gaudin,* 515 U.S. 506, 513 (1995).

now enshrined in the Sixth Amendment – has always outweighed the interest in concluding trials swiftly."[40]

**3.** The trial judge admittedly acquiesced to the prosecution's campaign to punish Appellants for the offense for which they were acquitted: a conspiracy to distribute crack cocaine. That confronts the majority and concurring opinions in *Alleyne*, a decision primarily dealing with and disapproving of using judicially-found facts to establish a mandatory minimum. Speaking for the majority, Justice Thomas observed that "[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense." [41] Where "a fact [i]s by law essential to the penalty, it [i]s an element of the offense," and therefore "every fact that [i]s a basis for imposing or increasing punishment" must be submitted to the jury (or admitted to by the defendant).[42]

---

[40]  *Booker,* 543 U.S. at 244. Ironically the Government urges that Appellants must be held accountable, a favorite trope of prosecutors, while hobbling the jury's ability to render decisions about whether the prosecution responsibly charged a crime in the first place.

[41]  2013 U.S. LEXIS 4543, *15.

[42]  *Id.* at *19.

To a similar effect is the concurring opinion of Justice Breyer, the key fifth vote in *Alleyne,* that there is a "traditional distinction between elements of a crime (facts constituting the crime, typically for the jury to determine) and sentencing facts (facts affecting the sentence, often concerning, *e.g.*, the manner in which the offender committed the crime, and typically for the judge to determine)."[43] As Justice Breyer explained:

> The early historical references that this Court's opinions have set forth in favor of *Apprendi* refer to *offense elements*, not to *sentencing facts*."  Thus, when Justice Story wrote that the Sixth Amendment's guarantee of trial by jury offered "securit[y] against the prejudices of judges," *** (quoting J. Story,] COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES §924, p. 657 (Abr. 1833)), he was likely referring to elements of a crime; and the best answer to JUSTICE SCALIA's implicit question in *Apprendi*--what, exactly, does the "right to trial by jury" guarantee?--is that it guarantees a jury's determination of facts that constitute the elements of a crime.[44]

With that understanding, it is evident that Appellants were sentenced, and openly so, by a judicially-found "fact" that they had engaged in a "conspiracy" with others to distribute 1.5 KG of crack cocaine.  That so-called fact was an entirely separate crime,[45] and here one rejected by a jury,

---

[43]  *Alleyne,* 2013 U.S. LEXIS 4543, at *40-41 (Breyer, J., concurring).

[44]  *Id.,* 2013 U.S. LEXIS 4543, at *41 (emphasis original) (citations omitted).

[45]  21 U.S.C. § 846.

and not a sentencing fact.   Appellants' sentences cannot withstand Sixth

Amendment review.

**II.    When a sentence is substantially reasonable only because of a judicially-found fact, that fact is legally essential to the sentence and the Sixth Amendment governs its application.**

Appellants' sentences could not be found substantively reasonable

(much less parsimonious) absent the judge-determined facts upholding the

conspiracy theory that the jury rejected.  The doctrine of "as-applied" review

affords an alternative basis that explains why Appellants' very lengthy

sentences defy Sixth Amendment principles.

In *Southern Union Co. v. United States*, the Government argued that

for Sixth Amendment purposes "'judicially found facts typically involve

only quantifying the harm caused by the defendant's offense'--for example,

how long did the violation last, or how much money did the defendant gain

(or the victim lose)?—'as opposed to defining a separate set of acts for

punishment.'" [46]  According to the Government, only the latter has

constitutional significance.  The Supreme Court found that belief to "rest[]

on an assumption that *Apprendi* and its progeny have uniformly rejected:

that in determining the maximum punishment for an offense, there is a

---

[46]  132 S. Ct. at 2356 (Brief for United States 25).

constitutionally significant difference between a fact that is an 'element' of the offense and one that is a 'sentencing factor.'" [47]

One can analogize the Government's faulty premise there to this case. The judicially-found facts of a "conspiracy" – something called "Relevant Conduct" – supposedly more accurately defined, "quantified" if you will, the "real" harm caused by the Defendants' offense of conviction, and ostensibly described how long that "real" violation lasted. As a result, substantial additional drugs were factored into the calculations, ending with an amount that dwarfed what the jury found. Thus facts that proved essential to Defendants' punishment were reserved for determination by the court – "the very inquiry *Apprendi*'s 'bright-line rule' was designed to exclude." [48]

The as-applied theory of Sixth Amendment substantive review defined in *Rita* is of a similar genre: "facts" essential to uphold Appellants' punishment were advanced by the prosecution and uncritically accepted by the trial judge. Appellants' very lengthy sentences were driven by judicial findings of non-elemental facts and would not withstand reasonableness review absent those non-elemental facts. They were, in other words, denied

---

[47] *Southern Union,* 132 S. Ct. at 2356 (citation omitted). *See also Alleyne,* 2013 U.S. LEXIS 4543, at *40-41 (Breyer, J., concurring).

[48] *Southern Union,* 132 S. Ct. at 2352 (citation omitted).

their right to a jury trial on facts that authorized a sentence beyond what would be permissible based on the elements alone.

The Government depicts this concept as being Justice Scalia's lonely concurrence in *Rita*. But that is misplaced. Putting aside the fact that Justice Thomas joined Justice Scalia,[49] their perspective is consistent with what Justices Alito, Kennedy and Breyer stated in *Cunningham*.

Nor is the Government accurate in thinking that prior Circuit decisions foreclose this theory. This Circuit has not been presented with an as-applied claim so it could not have excluded the theory.

Appellants recognized that other Circuits haven't embraced the theory. All of those decisions focused on the *Rita* concurrence while failing to recognize that it is based on a philosophy held by at least five Justices. Moreover these cases' facts rendered most of them unattractive candidates in any event.

### A. The as-applied doctrine is unexceptional: as its name implies, it depends on the facts.

The Government does not dispute that in *Cunningham,* Justices Alito, Kennedy and Breyer recognized that "reasonableness review imposes a very real constraint on a judge's ability to sentence across the full statutory range

---

[49]   *Rita,* 551 U.S. at 369-70 (Scalia & Thomas, JJ., concurring).

without funding some aggravating fact. "[50]  The majority opinion in *Rita*

then made explicit that its "Sixth Amendment cases do not *automatically*

forbid a sentencing court to take account of factual matters not determined

by a jury and to increase the sentence in consequence."[51]  This mean that in

*some* circumstances the Sixth Amendment *does* prohibit such practices.

Thus understood, *Rita* undercuts the notion that the Sixth Amendment

has no bearing whatsoever on the use of acquitted conduct in sentencing.

*Rita* teaches that a district court can always *consider* acquitted conduct.  But

a court cannot increase a sentence by reference to acquitted conduct when

the result becomes unreasonable without the inclusion of acquitted conduct.

As we will explain, that is the inherent deficiency in Appellants' sentencing.

### B. The facts fit comfortably within the as-applied doctrine.

The Government does not dispute that the judge-made findings

increased Jones from a Level 18 to a 34, Thurston from a 16 to a 36, and

---

[50]   549 U.S. at 302-03, 309 (Alito, Kennedy & Breyer, J.J., dissenting).  *See also* Appellants:45-50.   Although the Government asserts that Justice Alito also accepts judicial fact-finding to impose sentences above that reflected by the jury's verdict alone, Government:73 n.44, that proves too much.  The doctrine of as-applied review also accepts this proposition.  The error recognized by Justice Alito (a Justices Kennedy, Breyer, Scalia and Thomas) occurs where, as here, the sentence would not be upheld as reasonable but for the predominant inclusion of judge-found facts.

[51]  *Rita*, 551 U.S. at 353 (emphasis added).

Ball from a 24 to a 36 -- an inflation of nearly fourfold the normal amount of incarceration just based on quantity.  While the Government evades Appellants' references to the Sentencing Commission's reports, those statistics confirm beyond peradventure that few if any federal defendants convicted of selling such small amounts of drugs become enmeshed in situations where the Guidelines ranges are inflated so profoundly.[52]

This bring us to the Government's insistence that as-applied claim "require[s] a comparison of the facts in [appellants'] case[s] with the facts of *all* of the previously decided *appellate cases* to show that appellants' sentences would not have been upheld as reasonable based solely on the facts supporting the jury verdicts."[53]  Saying Appellants made no such attempt, the Government proclaims this argument abandoned.[54] Actually the *Rita* concurrence made a quite different statement.

In reality, Justices Scalia and Thomas wrote that: "Most cases do not resemble my stylized hypotheticals, and ordinarily defendants and judges will be unable to figure out, based on a comparison of the facts in their case with the facts of all of the previously decided appellate cases, whether the

---

[52]  Appellants:11, 49.

[53]  Government:73 (emphasis by Government)).

[54]  *Id.*

sentence imposed would have been upheld as reasonable based only on the

facts supporting the jury verdict or guilty plea."[55]  This is no "ordinary"

case: the Sentencing Commission's documentation proves that people

convicted of "street level" crack cases are not treated so harshly.  And

Appellants' sentences, openly driven by acquitted conduct, closely resemble

a hypothetical defined by Justice Scalia:

> Second, consider the common case in which the district court
> imposes a sentence within an advisory Guidelines range that has
> been substantially enhanced by certain judge-found facts.  For
> example, the base offense level for robbery under the Guidelines is
> 20, United States Sentencing Commission, Guidelines Manual §
> 2B3.1(a) (Nov. 2006), which, if the defendant has a criminal
> history of I, corresponds to an advisory range of 33-41 months, *id*.,
> ch. 5, pt. A, Sentencing Table.  If, however, a judge finds that a
> firearm was discharged, that a victim incurred serious bodily
> injury, and that more than $ 5 million was stolen, then the base
> level jumps by 18, §§ 2B3.1(b)(2), (3), (7), producing an advisory
> range of 235-293 months, *id*., ch. 5, pt. A, Sentencing Table.
> When a judge finds all of those facts to be true and then imposes a
> within-Guidelines sentence of 293 months, those judge-found
> facts, or some combination of them, are not merely facts that the
> judge finds relevant in exercising his discretion; they are the
> legally essential predicate for his imposition of the 293-month
> sentence.  His failure to find them would render the 293-month
> sentence unlawful.  That is evident because, were the district judge
> explicitly to find none of those facts true and nevertheless to
> impose a 293-month sentence (simply because he thinks robbery
> merits seven times the sentence that the Guidelines provide) the
> sentence would surely be reversed as unreasonably excessive.[56]

---

[55]  *Rita,* 551 U.S. at 377 (Scalia & Thomas, JJ., concurring).

[56]  *Id.,* 551 U.S. at 372 (Scalia & Thomas, JJ., concurring).

That is the flaw in Appellants' sentences.

The Government baldly insists that given the "seriousness of their crimes of conviction" and Appellants' "long histories of drug-dealing and violent crime," their sentences supposedly "readily could be upheld, even without consideration of their conspiracy conduct." [57] This "asserted but unanalyzed" claim should be rejected, for "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them."[58]  And second, what "long histories" of narcotics trafficking and violence?  For example, Ball was Criminal History I, and the judge rejected the prosecution's effort to tag a gun bump on Thurston.  The Government's theory is speculation.[59]

---

[57]  Government:73 n.45.

[58]  *Duncan's Point Lot Owners Ass'n v. FERC*, 522 F.3d 371, 377 (D.C. Cir. 2008).  The Government's passing citation to 18 U.S.C. § 3553(a)(2) is unhelpful: the § 3553(a) factors are "vague, open-ended and conflicting." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).

[59]  *United States v. Bradley*, 628 F.3d 394 (7th Cir. 2012) (rejecting sentence based on supposition).

### C. This Circuit has not adjudicated an as-applied claim.

The Government states that since *Rita* and *Gall* this Court has repeatedly permitted judicial fact-finding where sentences fell within the statutory maximum. None of the decisions cited by the Government adjudicated an as-applied claim.[60] Its assertion that accepting Appellants' argument requires reversing binding precedent[61] is incorrect.

---

[60] The Government invokes three decisions that preceded *Rita* and *Gall* and perforce did not construe an as-applied claim. *United States v. Dorcely*, 454 F.3d 366 (D.C. Cir. 2006); *United States v. Bras,* 483 F.3d 103, 105-06 (D.C. Cir. 2007); *United States v. Lawson,* 494 F.3d 1046, 1057-58 (D.C. Cir. 2007). (In *Lawson,* the record was so muddled that the Court remanded the case. 494 F.3d at 1057-58.) Nor was an as-applied argument advanced in *Brown*, a case impacted by plain error. Brief for Appellant, *United States v. Brown,* at 17-24 (D.C. Cir., No. 03-3102) (post-remand filing); *United States v. Brown,* 516 F.3d 1047, 1050 (2008). *Settles* involved an offense of conviction with a 37/46 month guidelines range and a 57 month sentence; no "as-applied" claim was adjudicated. Brief for Appellant at 4 (D.C. Cir., No. 06-3090); *United States v. Settles,* 530 F.3d 920, 922 (D.C. Cir. 2008). Lastly, *Mejia* didn't involve acquitted conduct and the appellant did not assert an as-applied theory. Brief for Appellant, *United States v. Mejia,* at 46-60 (D.C. Cir., No. 08-3097). Notably Mejia received 18 years imprisonment for conspiracy to import over 150 Kg of cocaine, a massive quantity compared to Appellants' 15/18 year sentences based on judge-made finding of conspiracy to distribute over 1.5 Kg of crack. *United States v. Mejia,* 597 F.3d 1329, 1334 (D.C. Cir. 2010).

[61] Government:70.

### D. The Government's out-of-Circuit references are readily distinguishable.

Appellants' Main Brief identified out-of-Circuit decisions which rejected the as-applied theory.  We stated that some of the sentences were unexceptional and that no court discussed the concept in detail.[62]

The Government devotes almost two pages to listing those decisions and some others, submitting (again) that under an advisory guidelines system a sentencing court can place an offender virtually anywhere within as the statutory ceiling.[63]  Those cases all focused on the *Rita* concurrence and overlooked Justices Alito, Kennedy and Breyer's conceptually similar *Cunningham* dissent that "although the post-*Booker* Guidelines are labeled 'advisory,' reasonableness review imposes a very real constraint on a judge's ability to sentence across the full statutory range without finding some aggravating fact."[64] Their views about reasonableness review are fundamentally indistinguishable from the *Rita* concurrence.  So while the

---

[62]  Appellants:50 & nn.144-45.

[63]  Government:68-70.

[64]  *Cunningham,* 549 U.S. at 309 (Alito, Kennedy & Breyer, dissenting).

opinions cited by the Government are worthy of respect, none answer the question presented here. [65]

Lastly, the Government's Chicken-Little prediction that recognizing the as-applied theory would "upend the *Booker* sentencing regime" [66] lacks merit. The number of reasonableness appeals is low.[67] And the as-applied concept excludes mine-run matters; as the *Rita* concurrence explains, most cases do not resemble Justices Scalia and Thomas's stylized hypotheticals.[68]

In the end, the Government's final sally seeks a blank-check endorsement that the statutory maximum is all that counts. That premise is legally wrong. In the post-*Booker* environment, a reasonable sentence requires some correlation between the factual record and the district court's

---

[65] Nor are the appellate courts as much in lockstep as the Government implies. *See, e.g. United States v. Broxmeyer,* 699 F.3d 265, 302 (2nd Cir. 2011) (Jacobs, C.J., dissenting) (observing "vexing constitutional questions" in such circumstances); *United States v. Vonner*, 516 F.3d 382, 411-12 (6th Cir. 2008) (*en banc*) (Moore, Martin, Daughtrey, Cole, & Clay, JJ., dissenting) ("applying a presumption of reasonableness to within-Guidelines sentences is unwise because of the potential for a violation of the Sixth Amendment in extreme cases"); *United States v. Phinazee*, 515 F.3d 511, 527 (6th Cir. 2008) (Merritt, J., dissenting) ("as-applied Sixth Amendment challenges . . .are still available.").

[66] Government:71.

[67] *Gall,* 552 U.S. at 598 n.7.

[68] *Rita,* 551 U.S. at 377-78.

28

reasoning in imposing that sentence.  The district court's decision recites a series of "factual findings that redefine[d] the offense, that render[ed] the enhancement a punishment for some offense different from the offense of conviction," giving rise to Sixth Amendment concerns.[69]  Appellants' sentences were impermissible even under the latitude *Booker* granted district courts.

### III.   The Government has not rebutted the defense theory of procedural unreasonableness.

The Government's conspiracy charges collapsed when the jury rejected the heavily impeached testimony of a remarkable melange of addicts, brigands, cutpurses and prevaricators.  At sentencing the defense explained why those people were unbelievable.  The Government does not dispute that they had lifelong histories of lying to the authorities and practically everybody else and some couldn't stop dissembling in the courtroom.  In those circumstances, the law required the trial court to explain why it found these people believable and not to let matters slide by paraphrasing loose snippets of several cooperators' direct testimony.

---

[69]   Gerald Leonard & Christine Dieter, "Punishment without Conviction: Controlling the Use of Unconvicted Conduct in Federal Sentencing," 17 BERKELEY JOUR. CRIM. LAW 260, 287 (2012). *See also* Robert Allen Semones, "A Parade of Horribles: Uncharged Relevant Conduct, the Federal Prosecutorial Loophole, Tails Wagging Dogs in Federal Sentencing Law," 46 U.C. DAVIS L. REV. 313, 351 (2012).

That analysis never occurred, unlike *United States v. Toms*, which the Government claims makes off-limits any role an appellate court might have in assessing credibility.[70]  No one asks this court to make credibility decisions.   That was for the district court –as occurred in *Toms*, where the trial judge explained what made the principal government witness seem truthful.[71]   So the Government's statement that "the court [below] specified the points on which it credited each of the witnesses"[72] is inflated.

The Government's assailing Appellants' challenges as "general" credibility attacks[73] jousts at windmills.  The issue is not merely whether the defense exposed the cooperators as lifelong liars.  Rather the shortfall lies in the trial court's failure to explain what made the cooperators believable.[74]

---

[70]   Government:80 (citing *United States v. Toms*, 136 F.3d 176, 187 (D.C. Cir. 1998)).

[71]   *Toms*, 136 F.3d at 187.

[72]   Government: 80.

[73]   Government:32, 89.

[74]   Government:7-29.  The Government says Steve Marsh wasn't a cooperator.  *Id*: 80 n.48.  That's a debater's point.  He was on supervised release and the prosecution subpoenaed him.  9339-45. Re-reading the record impels us to add that he did not expect to be charged for having "put a gun or two on the street . . . ."   Also Appellants overlooked another prior inconsistent statement that he was impeached with. *Id*. at 9370-72, 9389.

The Government's ornate reconstruction of the cooperators' direct testimonies, *i.e.,* the conspiracy case that it didn't prove at trial, is misdirected.  Courts of appeals do not determine facts.  The Government's theory should be directed at the trial judge to render a decision that permits informed review.

### A. Severe defects affect the prosecution's alternative universe.

The Government tacitly concedes that cooperators' histories reflected a high degree of mendacity and treachery.[75]  It attempts to counter through a highly wrought recital of their direct testimony, something the trial judge did not do, much less explain what made these actors' testimony believable.  A sound perspective on why this Court should remand the sentences can be gleaned from *United States v. Begin*:

> The Government has suggested various justifications for denying Begin's request for a downward variance. But the question is not how appellate courts themselves would have resolved the factors identified as relevant by 18 U.S.C.S. § 3553(a). Appellate courts are not sentencing judges. The sentencing judge, not the court of appeals, is in a superior position to find facts and judge their import under § 3553(a) in the individual case. Therefore, where the record is inadequate, an appellate court does not fill in the gaps by searching the record for factors justifying the sentence. Instead, the appellate court vacates procedurally unsound sentences and remands for the district court to exercise its discretion in a way that the appellate court can evaluate, and defer to, on appeal.[76]

---

[75]  Appellants: 61-83.

[76]  696 F.3d 405, 414 (3rd Cir. 2012).

31

**1.** Intent on winning an appellate battle over credibility, the Government submits that Appellants' challenges largely dealt with violence.[77] That theme is not tethered to the record.

Appellants' objections at sentencing detailed credibility deficits throughout the prosecution's case.[78] And while some of those comments addressed allegations of violence that were rejected by the jury, the Government's response unwittingly proves our point. If Appellants alluded, say, to a witness's jaw-dropper (such as Bobby Capies's insistence that it was broad daylight, "jive time," at 6 PM in January in D.C.), the fact that the testimony might have related to, say, an alleged shooting does not mean that witness otherwise was believable. Ultimately, the Government has no convincing answer to the unusual circumstances here, where twelve citizens

---

[77]    Government:32.

[78]    Ball Presentence Investigation Report 31 (overview), 34-35 (Kelliebrew), 35-36 (Crawford), 37 (Marsh), 37-39 (Wood), 40 (Browne/Capies), 48 (Capies) (#1408); Ball Memorandum in Aid of Sentencing 3-5 (Kelliebrew & Capies), 10-11 (Crawford), 12-13 (Marsh) (#1252); Thurston Memorandum in Aid of Sentencing (Capies), 7-8 (Conner), 8-12 (Martin/Parsons) (#1229); Thurston Reply Memorandum  3-4 (Powell) (#1231); Jones Sentencing Mem. 8 (Wood), 8-9 (Browne), 9 (Campbell), 9-10 (Crawford), 10 (Barnett), 11 (Connor), 12 (Kelliebrew), 14 (overview) (#1249).

rejected the overarching theory and the trial judge did not explain what made the witnesses persuasive.[79]

**2.** Appellants do not claim that the *falsus in uno, falsus in omnibus* doctrine required these people's entire stories be disregarded.[80] Yet the situation bespoke caution, particularly with many cooperators being addicts. The trial judge should not have turned a blind eye to that.[81]

**3.** Nor has the Government conjured a convincing theory of a unitary conspiracy responsible for over 1.5 KG of crack cocaine. Not only does it rely on anecdotal accounts of people found unworthy of belief, there were no significant seizures of crack cocaine. And the evidence of who was supposedly a member of Congress Park was inconsistent.

The Government has several come-backs, beginning with urging the Court to consider the so-called "'Congress Park Crew' membership list."[82] It omits some material facts.

---

[79]  *United States v. Lente*, 647 F.3d 1021, 1031, 1034 (10th Cir. 2011).

[80]  *Parker v. United States*, 801 F.2d 1382, 1385-86 (D.C. Cir. 1986).

[81]  Appellants: 60 & n.171 (citing, *inter alia*, *United States v. Brothers*, 75 F.3d 845, 847 (3rd Cir. 1996); *United States v. Beler*, 20 F.3d 1428, 1433-35 (7th Cir. 1994)) *Fletcher v. United States,* 158 F.2d 321, 322 (D.C. Cir. 1946) ("a drug addict is inherently a perjurer where his own interests are concerned….").

[82]  Government:28-29, 81.

*First,* the district court <u>precluded</u> the list's admission at trial.[83]  Even so, the United States sought the proverbial two, now three, bites at the apple. The prosecutors tried to shoehorn into the sentencing an inadmissible hearsay document.  It offers nothing suggesting any intervening force made this document reliable.[84]

*Second,* hearsay cannot be used at sentencing unless it is found reliable.[85]  Here no such finding was made and the district judge didn't address the list at sentencing.[86]

A similar rejoinder dispels any reliance on Newett Ford's conspiracy conviction in a separate trial.[87] Nothing indicates that jury made findings identifying his co-conspirators.  Nor did the trial judge discuss that verdict at Appellants' sentencing.[88]

---

[83]   Government Memorandum in Aid of Sentencing-Ball 33 (# 1228).

[84]   *United States v. Mahler,* 984 F.2d 899, 905-06 (8th Cir. 1993).

[85]    *United States v. Valencia-Lucena,* 925 F.2d 506, 515-16 (1st Cir. 1991).

[86]   Jones Sentencing 20-23; Thurston Sentencing 16-22; Ball Sentencing 28-37.

[87]   Government:81.

[88]   N.86, *supra*.

Next the Government advances Mr. Ball's testimony in the *Kevin Gray-(II)* case about whether one had to "hang in Congress Park" to sell cocaine.[89] This was not cited by the trial judge,[90] perhaps because it doesn't tie anyone to selling crack as part of the conspiracy charged here.

**4.** The quantity finding is plagued by a dependence on anecdotal accounts. Over-optimistic estimates of drug sales lead to reversals.[91] Appellants' sentences, based on statements of witnesses whose stock in trade was deception, remain prime candidates for a remand.

"'When choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution.'"[92]  A reviewing court "should exercise particular scrutiny of factual findings relating to amounts of drugs involved in illegal operations, since 'the quantity of drugs attributed to the defendant

---

[89]  Government:28, 81.

[90]  N.86, *supra*.

[91]  *See, e.g.*, *United States v. Stover*, 329 F.3d 859, 872-73 (D.C. Cir. 2003) (extrapolation unsupportable).  *See also United States v. Maliszwewki*, 161 F.3d 992, 1027-28 (6th Cir. 1998); *United States v. Marrero-Ortiz*, 160 F.3d 768, 779-80 (1st Cir. 1998) (rejecting "hunch or intuition"); *United States v. Acosta*, 85 F.3d 275, 282 (7th Cir. 1996); *United States v. Miele*, 989 F.2d 659, 668 (3rd Cir. 1993).

[92]  *United States v. Richards*, 27 F.3d 465, 469 (10th Cir. 1994) (citation omitted).

usually will be the single most important determinant of his or her sentence.'"[93] Estimation "'is not a license to calculate drug quantities by guesswork'"[94]

The Government glosses over the trial judge's failure to demonstrate anything close to that degree of scrutiny.  Given the lack of objective corroboration for the cooperators' accounts, the trial judge should have acted circumspectly.  And while the Government never met its burden to prove its conspiracy claim in the first instance,[95] "even if the record overwhelmingly support[ed] the enhancement, appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement."[96] The district judge's findings rest on unreliable witnesses and fail to state what made them so convincing.[97]

The Government (and the most important actor on the scene, the trial judge) never explained, for instance:

---

[93]  *Brothers*, 75 F.3d at 849 (citation omitted).

[94]  *Richards*, 27 F.3d at 469 (citation omitted).

[95]  *United States v. Price,* 409 F.3d 436, 444-45 (D.C. Cir. 2005). *Accord United States v. Bryant,* 571 F.3d 147, 155 (1st Cir. 2009).

[96]  *United States v. Chisum,* 502 F.3d 1237, 1243 (10th Cir. 2007).

[97]  *United States v Simmons,* 964 F.2d at 775-76 (rejecting factual findings provided by inherently unreliable witness).

- why Capies, with a history of pervasive lying and efforts to shift responsibility to others, who told stories at odds with immutable laws of nature, who knowingly caused innocent men to be accused of homicide, and whose hatred of Ball spills over the record, should have been accorded credence;[98]

- what made Kelliebrew, whose stream of lies and years of prodigious polysubstance abuse ran to the cusp of the trial (and seemingly into it), and who had betrayed family, friends, probation officers and judges throughout his life, believable;[99]

- how Conner, who had received almost $200,000.00 in Government funds, somehow metamorphosed from lying to courts, prosecutors, the police, roommates and unwitting girlfriends, into a trustworthy soul;[100]

- where was the ring of authenticity in the stories given by Keith Barnett, who concocted "elaborate" lies to grand

---

[98]   Appellants:61-64.

[99]   *Id.* at 65-68.

[100]   *Id.* at 68-70.

juries, agents and prosecutors, who destroyed evidence, and who was impeached at trial even by the prosecution;[101] and

- a cogent basis for crediting Gail Parson, whose addiction rivaled Kelliebrew's, who for days couldn't remember "half of what she'd done," who filched drugs while making controlled buys, and who received over $30,000.00 from the Government.[102]

These and others whom Appellants have identified without material contradiction[103] had manipulated others from time immemorial, always returning to hustling.  They could not be presumed to have cooperated fully with the Government in hope of receiving lightened sentences.

---

[101]   *Id.* at 72-73.

[102]   *Id.*  at 77-78.

[103]   Appellants:61-62, 64 (Capies), 65-66 (Kelliebrew), 69 (Connor), 71 (Powell), 72-73 (Barnett), 76-77 (Browne) 78-79 (Parson), 79 (Wood).

**5.**  We grant that the jury finding was based on the Government's failure to meet a higher standard of proof than the clear and convincing standard used in sentencing Thurston and Ball.[104]  But even if punishment primarily based on acquitted conduct is constitutional, the district court's decision is not immune from review.[105]

The standard of proof that the trial judge followed has significance.[106]  The Government does not deny that in sentencing applying a clear and convincing standard, the evidence is construed in the light most favorable to

---

[104]  The Government states that the clear and convincing standard is not required at sentencing.  Government:79 n.47.  This begs the questions of: (a) whether it is constitutionally proper to punish on the basis of acquitted conduct; (b) whether that can only be done under a reasonable doubt standard, *United States v. Baldwin,* 389 F. Supp. 2d 1, 2 (D.D.C. 2005) (citations omitted); or (c) whether a clear and convincing standard is required where the sentence is driven by acquitted conduct.  *Pineda-Doval,* 614 F.3d 1019, 1041 (9th Cir. 2010), *appeal after remand* 692 F.3d 942 (9th Cir. 2012).  If acquitted conduct can be considered, the trial judge had discretion to apply a higher standard of proof.  *Spears v. United States,* 555 U.S. 261, 264 (2009); *Kimbrough,* 552 U.S. at 109-10; *United States v. Corner,* 598 F.3d 411, 415 (7th Cir. 2010*) (en banc*) ("*Kimbrough* and *Spears* ... mean that district judges are at liberty to reject any Guideline on policy grounds--though they must act reasonably when using that power.").

[105]  Jones did not seek a heightened standard of proof at his sentencing.  Government:32 n.18.  But he contested the cooperators' lack of credibility, as the Government admits. *Id.* at 31-32.  Even under a lesser standard of proof, the district court failed to tackle the issue of credibility.

[106]  *Concrete Pipe & Prods. of Cal., Inc., v. Constr. Laborers, etc.,* 508 U.S. 602, 622-23 (1993).

the defendant.[107] Nor does it dispute that sentences whose facts didn't

measure up to that higher standard's demands have been overturned,[108] and

that all the courts of appeals have reversed decisions rendered under that

standard.[109]

Given the cooperators' muddled accounts, their palpable dissembling,

and their lack of believability, the district judge's finding of a unitary

conspiracy to distribute over 1.5 KG of crack cocaine did not meet the clear

and convincing standard of evidence.

**6.**  The Government retorts that under *Anderson v. City of*

*Bessemer,*[110] there could be no error on credibility, because the trial court

could believe one of two competing versions of the facts and its decision

implicitly rested on such determinations.[111]  This case differs greatly.

Given the jury's rejection of the cooperators, the district court should

have independently considered Appellants' submissions because of its

---

[107]  Appellants:58 & n.168 (citing *United States v. Montague*, 40 F.3d 1251,
1255 (D.C. Cir. 1998)).

[108]  *Pineda-Doval*, 692 F.3d at 946; *United States v. Smiley*, 553 F.3d 1137,
1145-46 (8th Cir. 2009); *Montague*, 40 F.3d at 1255.

[109]  Appellants:56-57& nn.165-66.

[110]  470 U.S. 564 (1985).

[111]  Government:78, 87.

material relevance to their sentencing. Particularly where drug quantity is at stake, the sentencing process must consider all available probative evidence, including witnesses' prior inconsistent statements and other proof contradicting trial testimony, and render an independent judgment.[112]  The trial court did not undertake that searching process here.

Even if credibility findings had been made, a district court may not "insulate [its] findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness."[113]  Factual findings are clearly erroneous where the court failed to account for conflicting evidence or gaps in a party's evidentiary presentation or otherwise incorrectly assessed the probative value of various pieces of evidence, leading it to rely on speculation,[114] and where the court failed to weigh all relevant evidence before making its factual findings.[115]

The absence of a demonstrated process of weighing the evidence, of explaining how the court concluded that a unitary conspiracy functioned in

---

[112] *United States v. Tavano*, 12 F.3d 301, 306 (1st Cir. 1993).

[113] *Anderson,* 470 U.S. at 575.

[114] *United States v. Rizzo*, 349 F.3d 94, 100-02 (2nd Cir. 2003).

[115] *Ortega v. Duncan*, 333 F.3d 102, 107 (2nd Cir. 2003).

Congress Park in the face of cooperators' concessions that distinct groups operated there,[116] and the cross-examination's shredding of the cooperators' accounts, undercuts the sentencing.

The Government suggests that Appellants never challenged the credibility of Ed Martin, an addict who frequented Congress Park, and Robert Pough, a hustler with another group in the area.[117]  It cannot mean they weren't cross-examined with results that bolster Appellants' theories.[118]

---

[116] Appellants:80-81.

[117] Government:81.

[118] Pough had two felony robbery convictions, one for assault with intent to rob, a federal firearms conviction, and an escape record.  As a 12 year-old he was armed and selling drugs; when first arrested he assumed his best friend's name and used a fake driver's license.  He falsely claimed to have resolved prior cases with "straight-up pleas." He was seeking to lessen a ten-year sentence for armed robbery.  Although Pough claimed to live in Congress Park, he typically claimed addresses elsewhere; his picture was not among a group that the prosecution was using to identify the so-called "Crew;" and when he was incarcerated no one from the neighborhood visited him.  11827-30, 11835-41, 11843, 11852, 11854-63, 11948, 12068.  Pough didn't expect to get charged for incidents involving weapons or for drug dealing and didn't dispute that the Government paid his family $20,000. 11868-74, 11915, 11933-34.  He consumed a gallon of alcohol daily, was a heroin and PCP user, and dealt drugs while on pre-sentencing release, on supervised release, and while incarcerated, where he made a couple of thousand dollars per month "juggling."  11887-88, 11964-65, 11989-90, 12104-06, 12021-22.

As it turned out, neither Martin nor Pough's names surfaced at Jones's sentencing. Pough was a bit player in Thurston's PSR, albeit on nothing to do with drug quantity.[119]

Martin's name cropped up at Thurston's sentencing as being one of his customers. Thurston underscored Martin's addiction and concessions that while he had bought crack from Thurston each purchase "wouldn't be a whole lot."[120] The district court did not quantify those purchases.[121]

During Ball's sentencing the prosecution wrote that Pough had characterized Ball as a "leader" in Congress Park.[122] Although the trial judge picked up on that theme, no one claimed Pough testified about quantity.[123]

---

[119] Thurston PSR, ¶ 57.

[120] Thurston Sentencing Memorandum 8-12 (citing 3767) (#1229); Thurston PSR, ¶¶ 30-34. Martin "would regularly go through sprees . . . and smoke vast quantities of crack cocaine that he purchased in Congress Park." Government's Memorandum in Aid of Sentencing-Thurston 11 (#1226).

[121] Thurston Sentencing 12-13.

[122] Government's Memorandum in Aid of Sentencing-Ball 10-31, 40-41 (#1228).

[123] Ball Sentencing 30-36, 39-40. Pough's offering little to the quantity calculation is unsurprising: he was in a different group. Government Memorandum-Ball 30 (#1228).

"'<u>Where the trial court fails to make findings, or to find on a material issue, and an appeal is taken, the appellate court will normally vacate the judgment and remand the action for appropriate findings to be made</u>[.]'"[124] The trial judge's failure to make findings about credibility requires that course to be followed here.

### B. The Government has not shown the proffers to be reliable.

The Government makes much ado over several proffers of persons who supposedly confessed to membership in "the conspiracy."[125]  Once again, it has overstated Appellants' position.  It asserts that Appellants suggested that information untested by cross-examination cannot be considered at sentencing.[126] We said nothing of the sort.

---

[124] *In re Sealed Case,* 552 F.3d 841, 848 (D.C. Cir. 2009) (emphasis added) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 292 n.22 (1982)). Where a district court "passes over in silence the principal argument made by the defendant even though the argument was not so weak as not to merit discussion," a court of appeals cannot be confident in the judge's attention to the § 3553 statutory factors. *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005).

[125] Government:81.

[126] *Id.* at 81 n.49.

Appellants observed that none of these people were cross-examined. Going on, Appellants stated that this process isn't invariably unacceptable for sentencing done "on the cheap."[127]  But here each proffer was vague.[128]

But these proffers were uninformative.[129]  Some, such as Mary McClendon's, say nothing about the nature of the conspiracy or mention Appellants.[130]  The Government doesn't deny that most of the proffers don't name Ball; the few that identify Thurston say little about him.  And the Langley Proffer that the Government mentions doesn't identify Ball or Thurston as among his co-conspirators.[131] The Handon Proffer, in turn, says nothing about Ball or Jones and mentions two small sales to Thurston.[132] The Johnson Proffer hardly instills confidence either.  It identifies Ball and

---

[127] *Id.* at 97 & n.323 (citing *United States v Moncivais,* 492 F.3d 652, 658 (6th Cir. 2007)).

[128] *Compare* Appellants:84-86 & nn.284-87.

[129] Appellants:84-86.

[130] Appellants:85 n.284; Government:26-27.

[131] Appellants:85 n.285; Government:26.

[132] Appellants:86 n.288; Government:27.

Jones without particularizing what Johnson purportedly sold them.[133]  Such vague accusations make the proffers valueless.[134]

This leads to the Government's airbrushing of the other seven proffers.  Although the Government intones that those other co-defendants "pleaded guilty to RICO conspiracy involving appellants and the other indicted defendants,"[135] just invoking the word "conspiracy" -- like "Mafia" in other cases – does not justify disregarding the proper burden of proof and other protections to which Appellants were entitled.

More importantly, the Government's representation is hyperbole. None of those other proffers mentioned Ball.  Of the two that sketchily referred to Thurston's street sales, one identifies an offense for which he was convicted.[136]

---

[133] Appellants:85 n.286; Government:26.  At trial the Government claimed that Johnson was at the courthouse as a potential witness.  Its unwillingness to expose him to cross-examination justifies skepticism toward its sneaking him through the back door at sentencing.

[134] *Mahler,* 984 F.2d at 989.

[135] Government:27.

[136] Appellants:86 & n.287.

46

This court has cautioned against undue reliance at sentencing on "vigorously dispute[d]" hearsay.[137]  The trial judge knew that the prosecution's conspiracy theory was suspect.  To rely on proffers as proof of the criminal enterprise that the jury rejected is a bridge too far.

## IV. The Government's *post-hoc* explanations do not justify the deprivation of Appellants' right to a speedy sentencing.

The government concedes that two of the four *Barker*[138] factors – length of delay and defendants' requests for sentencing --weigh in Thurston and Ball's favor.[139]  It incorrectly suggests that the other two factors -- reason for delay and prejudice -- do not.[140]

A delayed appeal can be prejudicial.[141]  The Government's statement that the delay was unrelated to its misconduct is irrelevant;[142] the trial courts have a duty to protect the right to a speedy appeal.[143]

---

[137]  *United States v. Lemon*, 723 F.2d 922, 934-35 & n.35 (D.C. Cir. 1983).

[138]  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[139]  Government:95-96.

[140]  *Id.*

[141]  *United States v. Yelverton*, 197 F.3d 531, 538 (D.C. Cir. 1999).

[142]  Government:96.

[143]  *Yelverton¸* 197 F.3d at 538.

The prosecution does not seriously maintain that the delay caused by the district court's professed concern -- that Wilson's *Brady* claims might jeopardize Thurston and Ball's convictions -- was reasonable. Neither joined Wilson's motion. And Wilson's contentions relating to a 1998 double murder were irrelevant to the crack sales for which they were convicted.[144] Instead the government suggests -- in a footnote -- that the Court's concern was valid because Wilson's allegations "undermined the credibility of several key witnesses, including Capies and Kelliebrew, not just regarding the double murder but also regarding the case's 'historical facts.'"[145]

Those "historical facts" were, quite simply, utterly irrelevant to Appellants' three crack sales that occurred years later. Rather, they stemmed from a 1997 murder which the government maintained motivated the 1998 homicides. While Wilson maintained that the *Brady* information would have provided him further impeachment of Capies and Kelliebrew,[146] neither of them testified about the controlled "buys" for which Thurston and

---

[144]  Appellants:99.

[145]  Government:96 n.56.

[146]   #1377.

Ball were convicted.  Additional impeachment of Capies and Kelliebrew

over the murders wouldn't have impacted Appellants' convictions.

The government also characterizes as "unwarranted speculation"

Appellants' suggestion that the trial court used Wilson's motion as a "fig

leaf" to deflect scrutiny of its delay and that their lengthy sentences were, in

part, a self-fulfilling result.[147]  But it offers no plausible explanation for the

trial court's snail-like administration of sentencing.  By leaving unanswered

Appellants' (and the prosecution's) persistent requests, the district court

infringed Appellants' right to have their sentences promptly reviewed.  (A

salient update: Appellants' fully-briefed motion in the district court for

release on conditions pending appeal is poised to enter its fourth month.)

The remedy is the key issue.  In *Yelverton*, a mandatory minimum

sentence "far exceeded" the delayed sentencing, so the appeal was denied.[148]

Here Thurston faced no mandatory minimum and the one flowing from

Ball's conviction has long expired.   Even if Appellants' cause proves

unsuccessful on appeal, the modest relief provided by the trial judge is

insufficient, not just in their cases but also because of the message that

would send to other courts.   We suggest that Appellants each be credited

---

[147]  Government:97 n.59.

[148]  197 F.3d at 538.

with an additional credit of a day off their sentence for every day following

the date that each originally was to be sentenced.

## Conclusion

Appellants' sentences should be vacated and this cause remanded for

resentencing within a very narrowly-defined timetable.  Meanwhile

Appellants should be granted release pending re-sentencing, on the

conditions outlined in their pending motion for release pending appeal.  The

panel also should retain jurisdiction in order to ensure timely compliance

with its mandate.

Respectfully submitted,


*/s/ Stephen C. Leckar*
Stephen C. Leckar, #281691
1850 M St., NW
Suite 240
Washington, D.C. 20036
202.742.4242
Counsel for Antwuan Ball
*(Appointed by the Court)*

*/s/ Jonathan Zucker*
Jonathan Zucker, #384629
Patricia A. Daus, #412174
1350 Connecticut Ave., NW
Suite 202
Washington, D.C. 20036
202.624.0784
Counsel for Desmond Thurston
*(Appointed by the Court)*


*/s/ Anthony D. Martin*
Anthony D. Martin, #362537
Maryland Trade Center, III
7501 Greenway Center Drive
Ste 460
Greenbelt, MD 20770
301. 220-3700
Counsel for Joseph Jones
*(Appointed by the Court)*

**Word Count and Font Certificate**

I certify that this brief is prepared in Times New Roman 14-point font

and contains approximately 9,992 words.

/s/ Stephen C. Leckar
Stephen C. Leckar

**Certificate of Service**

I caused a copy of the foregoing to be served this 3rd day of July,

2013, by ECF to:

Stratton Strand, Esq.
Appellate Section
United States Attorneys Office
Room 8104, 555-4th St., NW
Washington, D.C. 20001

/s/ Stephen C. Leckar
Stephen C. Leckar